van Gestel, J.
This matter comes before the Court on a request by the several plaintiffs for preliminary injunctive relief pursuant to Prayer 2 of the Complaint. What is sought by Prayer 2 is a preliminary injunction “ordering the City [of Worcester] to revoke its rejection of the filed sub-bids submitted by Plaintiffs on November 6, 2002.”

BACKGROUND

By bid documents dated September 12, 2002, the City of Worcester (the “City”) sought general bids and statutorily filed sub-bids for 16 classes of work for a new Worcester Vocational High School (the “School”), pursuant to G.L.c. 149, Secs. 44A-44H. The bid documents incorporated the City’s Residency Requirement Ordinance (“RRO”). The RRO required each subcontractor on the project to employ residents of the City to provide at least fifty percent of the total employees in its trade.
The bid documents provided that the filed sub-bids were to be opened on November 6, 2002. This occurred. The general bids, however, have yet to be opened, in part, at least, for reasons that follow.
Parties other than the plaintiffs here filed suit in the U.S. District Court for the District of Massachusetts (the “Federal suit”) attacking the inclusion of the RRO in the contract documents. The Federal suit is captioned Utility Contractors Ass’n of New England, Inc. et al. v. City of Worcester, CA No. 02-11877-NG (D.Mass. 2002).
On December 23, 2002, in the Federal suit Judge Gertner issued a preliminary injunction prohibiting the City from including the RRO in any bid specification or contract or requiring contractors to comply with the RRO as a condition of bidding on any public works project for the City. The language of Judge Gertner’s injunction reads, in its entirety, as follows:
Pending further order of this Court, a preliminary injunction issues enjoining the defendant City of Worcester and its officers, agents, servants, members, employees, their successors in office, and all persons acting in concert with them or in their behalf from:
(1) Including in a bid specification, contract or purchase order, or otherwise utilizing or enforcing Chapter 2, Section 32 of the Revised Ordinances of the City of Worcester, which requires fifty percent of construction man-hours on public works projects to be allocáted to Worcester residents; and
(2) Requiring contractors to comply with Chapter 2, Section 32 of the Revised Ordinances of the City of Worcester as a condition of bidding on any public works project for the City of Worcester.
On December 30, 2002, the City issued Addendum No. 7 to the bid documents for the School. This Addendum provided that, because of Judge Gertner’s injunction, all sub-bids received on November 6,2002, were rejected, and new sub-bids would be received on Januaiy 22, 2003.
The plaintiffs point out that, for them, including the RRO in the bid specifications had no effect on their sub-bid prices because they were otherwise required to pay the same prevailing wage rates regardless of the place of residence of their employees. Further, the RRO did not affect the scope of the work the plaintiffs were required to perform.
The plaintiffs, therefore, argue that to require new sub-bids is contrary to law, and also is unfair because their competitors now know the amounts previously bid. Each of the plaintiffs was the low bidder for its trade on November 6, 2002.

DISCUSSION

In order to prevail on their request for preliminary injunctive relief, the plaintiffs bear the burden of showing: their likelihood of success on the merits; that they will suffer irreparable harm if the injunctive relief sought is not granted; and that their harm, without the injunction, outweighs any harm to the City from being enjoined. GTE Products Corp. v. Stewart, 414 Mass. 721, 722-23 (1993); The Modern Continental Construction Co. v. City of Lowell 391 Mass. 829, 837 (1984); Packaging Indus. Group, Inc. v. Cheney, 380 Mass. 609, 616-17 (1980).
This matter came before this Court on the afternoon of January 21, 2003. The Court was advised that the new sub-bids, if required, are due at 11:00 a.m. on January 22, 2003, fewer than 24 hours after the hearing on the request for injunctive relief.
At oral argument, and in its brief, the City essentially concedes that but for Judge Gertner’s prelimi *634 naiy injunction, it would be legally inappropriate to reject the sub-bids filed on November 6, 2002, and opened, without rejection, shortly thereafter. This Court agrees with the City’s assessment of the legal posture. G.L.c. 149, Sec. 44E(1), and the cases interpreting it, see, e.g., Annese Electrical Services, Inc. v. City of Newton, 431 Mass. 763, 770 (2000), and Rudolph v. City Manager of Cambridge, 341 Mass. 31, 35 (1960), make this clear.
Consequently, on the issue of likelihood of success on the merits, this Court must perform the uncomfortable task of divining the reach of Judge Gertner’s injunction. Does it require the Ciiy, in order to be obedient to the injunction, to reject the sub-bids filed almost two months before its issuance?
Certainly, Judge Gertner did not intend to preempt the public bidding laws of the Commonwealth; nor did she.
As she explained in her detailed supporting memorandum, Judge Gertner was acting in a manner consistent with the Constitutional mandate derived from the Privileges and Immunities Clause, which guarantees every citizen of the country all the rights and privileges enjoyed by every other citizen. To do this, in the case before her, Judge Gertner quite correctly enjoined the Ciiy from imposing or enforcing the RRO upon the contractors involved in the School project.
What Judge Gertner clearly did not do was prevent, on some kind of ex post facto basis, the filing of the sub-bids on November 6, 2002, even though the bid solicitation therefor advised all bidders that the RRO would be a part of the ultimate contract.
Nor does this Court believe that Judge Gertner’s injunctive language in fact, or by intention, places the Ciiy in a position wherein it would be in contempt of her order if it proceeded to utilize the November 6, 2002, sub-bids in an ultimate contract that did not include the RRO. In short, while only Judge Gertner truly knows, a fair reading of the language she chose, in the context in which it was chosen, does not prevent or excuse the City from otherwise obeying the Massachusetts public bidding statutes. Thus, the plaintiffs have a strong likelihood of success on the merits.
Further, there would be definite harm to the plaintiffs if they were caused to lose their successful bidding stance. The amount of damages to which they would be entitled would basically be just the costs involved in the bidding process, a far ciy from the potential profits of performing the work. See, e.g., Paul Sardella Construction Co. Inc. v. Braintree Housing Authority, 3 Mass.App.Ct. 326, 333-35 (1975). At the same time, the Court sees no harm to the City by its being compelled, as the law clearly seems to do, to accept the low-bidding plaintiffs without putting them in the unfair position of having their bid known by their competitors in a second round of bidding. It is fair competitive bidding that is the object of the statutes, not bidding skewed by an irrelevant condition in the bid documents which has now been ordered out by a Federal judge.
A balancing of the equities also favors the plaintiffs. They have much to lose and the Ciiy does not.
Lastly, the public interest requires a deep concern for the Constitution, such as that imposed by Judge Gertner in the Federal suit, and a fair application of the Massachusetts public bidding statutes. The two can walk comfortably together.
Consequently, the injunctive relief requested will be granted.

PRELIMINARY INJUNCTION

Upon payment of the appropriate fee by the plaintiffs, the City of Worcester is preliminarily enjoined and ordered to revoke Addendum No. 7 to the bid documents as it relates to the sub-bids received on November 6, 2002, in connection with the Worcester Vocational High School project, so that such sub-bids, without refiling, may be utilized, consistent with G.L.c. 149, Secs. 44A-44H, in connection with the general bids on the project now scheduled to be filed on February 5, 2003.